HOOD, Judge.
Plaintiff, Frank W. Schultz, filed this suit to foreclose by executory process on a mortgage indebtedness affecting real property in Rapides Parish. The suit was instituted against Eugene Robinson, the mortgagor and maker of the note secured by that mortgage. Robinson filed a petition in the same suit praying for judgment enjoining the sale of the property. And, in that proceeding judgment was rendered by the trial court in favor of Robinson, granting a preliminary injunction prohibiting Schultz and the Sheriff of Rapides Parish from proceeding with the sale. Schultz has appealed.
The principal questions presented are: (1) Did the failure of Robinson to make the payment of interest which became due on the note in January, 1970, enable the mortgagee to invoke the acceleration clauses of the note and the mortgage, and thus to demand payment of the entire indebtedness? (2) Did defendant Robinson obtain a valid extension of time within which to make the installment payment which became due in January, 1970, and if so, whether an adequate tender of payment was made within the period of that extension?
The facts are that Schultz sold an 823-acre tract of land in Rapides Parish to Robinson on January 3, 1967. The property was sold for $250,000.00, of which amount $50,000.00 was paid in cash, and the remaining balance of $200,000.00 was to be paid in annual installments extending over a period of twenty years.
As evidence of the purchaser’s indebtedness for the credit portion of the sale, Robinson executed a promissory note, made payable to the order of “Myself” and endorsed in blank by the maker, which note is dated January 3, 1967, and reads in part as follows:
“For value received, I promise to pay to the order of MYSELF, Two Hundred Thousand & No/100 Dollars, with interest from date until paid at the rate of five per cent per annum, payable annually on the whole. This note is due and payable in installments as shown below. This note is secured by mortgage on certain real property. Failure to pay this note, or any installment thereof, when due shall at option of the holder hereof, mature all of said installments then unpaid. * * * ” (Emphasis added)
The above-quoted portion of this note was followed by a schedule of payments, showing that the first eighteen annual payments due on it were for $4,000.00 each, and that the last two annual payments were for $64,000.00 each. According to this schedule, the first payment of $4,000.00 became due on January 1, 1968, and the other annual payments become due on January 1st of each succeeding year thereafter, the last payment in the amount of $64,000.00 becoming due on January 1, 1987.
The above-described promissory note was paraphed for identification with an act of “Sale and Mortgage,” dated January 3, 1967, and executed by both parties. Under the terms of this sale and mortgage, Schultz sold and conveyed the above-mentioned property to Robinson, and Robinson executed a vendor’s lien and mortgage affecting the property and securing the payment of the above-mentioned promissory note. With reference to the payment of *923 the purchase price for said property, the act of sale and mortgage provides:
“The sale is made and accepted for and in consideration of the price and sum of Two Hundred and Fifty Thousand & NO/lOO Dollars paid and payable as follows, viz: $50,000.00 cash in hand paid, the receipt of which is hereby acknowledged, and the balance of $200,-000.00 payable as follows: in twenty (20) annual payments, the first eighteen (18) being in the amount of $4,000.00 each, the 19th and 20th being in the amount of $64,000.00 each, the first of which payments is due Jan. 1, 1968 and one more payment due annually thereafter until full and final payment, the last payment being due January 1, 1987, for which the said purchaser has this day executed and given his certain installment promissory note made payable to the order of himself and by him endorsed conditioned to bear interest at 5 per cent, per annum from date, payable annually on the whole, until paid; which said note, after having been by me, Notary, duly paraphed “Ne Varietur” of this date for identification herewith has been handed to said Frank W. Schultz who hereby acknowledges receipt of same.” (Emphasis added)
The parties used a printed form for the act of sale and mortgage but a number of additional provisions were typed on that form. Immediately following the above description of the promissory note, the printed portion of the act of sale and mortgage provides, “And now in order to secure the full and punctual payment of said note at maturity in principal and interest * * the vendee mortgages the property to secure the above-mentioned note. The printed portion of the instrument also contains a confession of judgment “ * * * for the full amount of said note, in principal and interest. * * * ”
The act of sale and mortgage also contains a typewritten provision which reads:
“It is further understood that in the event any one of the annual payments shall become due and remain unpaid for a period of thirty (30) days, then all remaining notes of the series shall become immediately due and payable at the option of the then holder of said note without the necessity of further notice or putting in default.” (Emphasis added)
On December 27, 1967, Robinson paid the first annual installment of $4,000.00 on the note, plus the interest which had accrued for the first year. The second annual installment, with interest, was paid on January 14, 1969. No other payments have been made on the note or on the mortgage indebtedness since that time.
Shortly before, or a day or two after, January 1, 1970, Robinson contacted Schultz and advised him that he was not able to make the payments which were due the first part of that month, but that he would be able to make them by January 10 or 11, 1970. Schultz agreed to wait until January 10 or 11 for the payment. Robinson did not make a payment on January 10 or 11, as promised, and he did not contact Schultz on either of those days. Schultz thereupon wrote to Robinson on January 15 advising that “We have been waiting to hear from you as you promised to make payment on the 10th or 11th.”
Robinson went to Schultz’s home on January 23, 1970, and advised him that he still was unable to make the payment of principal and interest due on the note, but he offered to pay him $4,000.00, representing the payment of principal only. Schultz refused to accept that amount, stating that he would accept only the full amount of principal and interest which became due in January, 1970. Robinson and Schultz disagree as to what transpired on that occasion in Schultz’s home, after that offer to pay $4,000.00 was made. Robinson contends that on that date, January 23, Schultz agreed to grant him another extension until February 4, 1970, within which to make the payments which became due in January. *924 Schultz denies that any such extension was granted.
This foreclosure proceeding by executory process was filed by Schultz on February 3. Domiciliary service of the Notice of Demand was made on Robinson the next day, February 4, by leaving the papers with Mrs. Eugene Robinson. About 6:00 p. m. on February 4, Robinson attempted to contact Schultz at the latter’s home but was unable to do so. However, he did see Schultz at his home the next day, February 5. Robinson contends that he then offered to pay the full amount of principal and interest due in January, 1970. Schultz denies that any such offer was made.
Both parties agree that in view of one of the quoted provisions in the act of sale and mortgage, Robinson had a 30-day “grace period” within which to make payments on the note, and that the acceleration clauses of the note and mortgage could not be invoked if the payment due on the note was made at any time within that 30 day grace period.
Robinson contends that the acceleration clauses in the note and mortgage can be invoked by the mortgagee only upon the failure of the mortgagor to pay an annual installment of the principal, and that such clauses cannot be invoked solely upon Robinson’s failure to pay an installment of interest. He takes the position that the offer which he made to Schultz on January 23, 1970, to pay $4,000.00 on the note, that being the payment of principal which was due on January 1, 1970, effectively bars Schultz from invoking the acceleration clauses and from declaring the entire indebtedness to be due. That offer of payment, Robinson argues, was made timely, since it was made within the 30-day grace period provided in the mortgage.
The trial judge interpreted the acceleration clause in the act of mortgage to mean “that in the event one of the annual payments, a $4,000.00 payment, is not made within 30 days, then the remaining installments become due and payable.” He held, however, that the mortgage does not provide “for acceleration in the event of the failure to pay the interest on the unpaid principal.” And, he concluded that the offer made by Robinson on January 23 to pay $4,000.00 prevented an acceleration of the indebtedness. We are unable to agree with the trial judge in that conclusion.
The note provides that the interest due on it shall be payable annually, just as the principal payments are to be made. It also provides that failure to pay “this note, or any installment thereof,” when due can mature the entire indebtedness. The requirement in the note that the interest be paid in annual installments is just as explicit as is the requirement that the principal be paid in annual installments. It may be true, as argued by Robinson, that the $4,000.00 payment on principal became due on January 1, and that the payment of the interest became due on January 3, 1970, but both payments nevertheless are installments due on the note. We think the failure to pay an annual installment of interest is a failure to pay “this note, or any installment thereof,” thus enabling the holder to declare the entire indebtedness due.
The act of mortgage which secures the note also provides that the interest is “payable annually on the whole,” and that the mortgage secures the payment of the principal and interest. The acceleration clause in that act provides that the entire indebtedness may mature if there is a default of any one of the “annual payments,” and if that payment shall remain unpaid for 30 days. Defendant argues that the term “annual payments” means only annual payments on the principal. We assign no such meaning to that term. The note specifically provides for an annual payment on the principal and an annual payment on the interest. We think the failure to pay either of these annual payments within the 30-day grace period enables the holder of the note to declare the entire indebtedness due and payable.
*925 It is unnecessary for us to determine whether an “offer” to make a payment on the note within the 30-day grace period, without a formal tender or without actually making the payment, has the legal effect of preventing an acceleration of all other payments. Assuming that it does have such an effect, we hold that the offer of $4,000.00 made by Robinson on January 23, 1970, or even the payment of that amount on that date, would not have been sufficient to prevent an acceleration of this indebtedness, unless the evidence shows that other payments were made within the grace period or that the time for making that payment was extended. We think it was necessary for Robinson to pay the annual installment of interest, as well as the principal installment, within the grace period in order to prevent an acceleration.
Defendant Robinson contends next that Schultz’s agreement to give him until January 10 or 11, 1970, within which to make the payments falling due on January 1 and 3, had the effect of extending the “maturity dates” for those payments, as shown on the note, to January 10 or 11. He takes the position that the 30-day grace period provided in the mortgage was also extended, that it began to run on January 11, and that he thus actually had until February 10, 1970, within which to make the payments which became due in January. The trial judge agreed with that argument, but we think he erred in doing so.
Robinson testified that he contacted Schultz shortly before January 1, 1970, for the purpose of getting an extension of time within which to make the payment falling due on that date. He stated that he did not know at that time that he had a 30-day grace period within which to make the payment, that he thought that the payment actually had to be made on January 1, that he had some soybeans which he expected to sell on January 10, and that he intended to use the proceeds of that sale to pay the installments which became due in January. He informed Schultz of the fact that he expected to receive payment for his soybeans by January 10, that he also expected to receive some additional funds about the same time from the sale of some property in Krotz Springs, and that he expected to use some of the proceeds from these sales to pay the current installments on the note by the 10th or 11th of January. Since he was unaware of the fact that the mortgage provided for a 30-day grace period, it is apparent that when he contacted Schultz on that occasion he did not have in mind obtaining an extension until February 9 or 10 for making the payment.
Schultz testified that he knew about the 30-day grace period provided in the mortgage when he first talked to Robinson, and that he readily accepted Robinson’s promise to make the payment on January 10 or 11 since it was within that 30-day period. He conceded that Robinson had the right to delay making the payment until January 30 without running the risk of accelerating the indebtedness, but that when Robinson voluntarily promised to pay him on January 10 or 11, Schultz thereafter assumed that the payment would be made on one of those days.
We are convinced that when the parties agreed that payment could be made on January 10 or 11, 1970, neither party intended that the grace period was to be extended or that a new 30-day grace period would begin to run on January 11. Our conclusion is that when Schultz agreed that the payment could be made on January 10 or 11, that agreement did not have the effect of extending the 30-day grace period provided in the mortgage. It was necessary, therefore, for the payment of principal to be made on or before January 31 and for the payment of interest to be made by February 2, 1970, in order to prevent the holder of the note from invoking the acceleration clauses of the note and mortgage.
Robinson contends further that on January 23, 1970, Schultz granted him another extension until February 4, 1970, within which to make the payments of principal *926 and interest. Schultz denies that any such extension was granted. The trial judge considered it unnecessary to determine that issue.
Robinson testified that two men went with him when he visited Schultz’s home on January 23, and that they remained seated in his pick-up truck in front of the house while Robinson was inside. He further stated that when he and Schultz walked out of the house and were near the pick-up truck, Schultz repeated his agreement to extend the payment of the note until February 4. Robinson then called two witnesses, Clifford L. Peace and W. Larry Gremil-lion, who stated that they were seated in Robinson’s pick-up truck when the parties came out of the house, and that they heard Schultz state, in substance, that it would be all right for Robinson to pay him the principal and interest due “when you settle your business” or “when you get your business completed.”
Schultz denies that he agreed to grant an extension of time on January 23. He stated that on that occasion he merely refused to accept Robinson’s offer to pay only $4,000.00, and that he informed Robinson that he would insist on the payment of the principal and interest. He stated that he expected that payment to be made by January 30, that being the date on which he thought the 30-day grace period expired. Schultz also stated that there was no one else in Robinson’s truck on that occasion, and that “the only way he could have somebody in there would be laying down below the glass, because I don’t believe those two men could have done that.”
Mrs. Schultz and her daughter were in the home when Robinson arrived. They left the house while he was there and passed by the side of Robinson’s truck. Both testified that they particularly looked in the truck as they passed to see if Robinson had brought his wife with him so they could invite her in the house. And both of these witnesses testified positively that there was no one in the truck while Robinson was in the house talking to Schultz.
Parol evidence is admissible to prove that an extension of the payment date of a note has been granted by the holder. The burden of proving that such an extension was granted, however, rests upon the obligor. Emblem, Inc. v. Picolo, 123 So.2d 799 (La.App. 4 Cir. 1960).
In this case we conclude that the obligor, Robinson, has failed to establish that an extension of the payment date was granted on January 23, 1970. The 30-day grace period provided in the mortgage for making the payments due on January 1 and January 3, 1970, expired on January 31 and on February 2, of that year. No payment was made, and not even any “offer” to pay the principal and interest was made, within that time. This suit was instituted on February 3, 1970, which was after the time for making the payment had expired. Robinson concedes that no offer of payment was made until February 5.
Under these circumstances we hold that Schultz had the right to invoke the acceleration clauses of the note and mortgage, and to demand payment of the entire indebtedness, when this suit was filed on February 3, 1970. The trial judge thus erred in granting a preliminary injunction prohibiting the sale of the mortgaged property.
For the reasons herein set out, the judgment appealed from is reversed, and judgment is hereby rendered in favor of plaintiff and defendant-in-rule, Frank W. Schultz, and against defendant and plaintiff-in-rule, Eugene Robinson, rejecting Robinson’s demand for a preliminary injunction. Judgment further is rendered herein directing the judge of the district court to re-issue or to reinstate the order of executory process. The case is remanded to the trial court for further proceedings consistent with the views herein expressed.
Reversed and remanded.